**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **Triston D. Fowler,** | ) | **Civil Action No.:__________** |
| **Plaintiff,** | ) | |
| **v.** | ) | **COMPLAINT** |
| **American Honda Finance Corporation,** | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

**COMPLAINT**

1. This is an action brought by Plaintiff, Triston D. Fowler, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (hereinafter "FCRA"). Plaintiff also seeks compensatory and punitive damages for the Defendant's violations of South Carolina common law set forth herein.

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §1681s-2(b), which is one of the cornerstone provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home*. *We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

**<u>JURISDICTION AND VENUE</u>**

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p and 28 U.S.C. §1331 and §1367.

8. Venue is proper in the Charleston Division because the Plaintiff now resides in Dorchester County, and the Defendant transacted business there, as well as throughout the state of South Carolina.

## PARTIES

9. Plaintiff, Triston D. Fowler, is a resident and citizen of the State of South Carolina, Dorchester County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant American Honda Finance Corporation is a California corporation that may be served with process through its registered agent for service of process, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492. Defendant Honda was in all respects and at all times relevant herein doing business in the state of South Carolina.

11. Honda is a furnisher of information to at least one Consumer Reporting Agency ("CRA"), Experian, in that it regularly reports account data on consumer credit cards.

## FACTUAL ALLEGATIONS

12. In September 2024, Plaintiff first became aware that he was the victim of identity theft when Bank of America alerted him that his social security number was being used to enroll in a military benefits program and that his profile was flagged incorrectly as active-duty military.

13. Upon reviewing his credit reports, Plaintiff discovered that someone in Rancho Cucamonga, California had been using his social security number since 2019 to obtain credit and purchase vehicles.

14. On September 17, 2024, Plaintiff obtained a copy of his Experian credit report and also added a credit freeze to his Experian credit report. At that time, Plaintiff's Experian credit score was 687 due to all of the inaccurate credit accounts being included on his report.

15. On September 19, 2024, Plaintiff filed a police report with the Spartanburg Police Department, where he was living at the time. That same day, Plaintiff also filed an Identity Theft Affidavit with the Federal Trade Commission.

16. On November 29, 2024, Defendant obtained a copy of Plaintiff's Experian credit report without his permission or authorization.

17. At the time Defendant obtained Plaintiff's Experian credit report, his report contained a security freeze. In order for Defendant to obtain Plaintiff's credit report, Defendant had to certify to Experian that it had a permissible purpose for obtaining the report. Defendant did not have a permissible purpose for obtaining Plaintiff's credit report.

18. Due to Defendant's hard inquiry of Plaintiff's credit report, on December 20, 2024, Plaintiff's Experian credit score dropped 40 points, from "Very Good," to "Good."

19. On December 21, 2024, Defendant began reporting a new account on Plaintiff's Experian credit report, American Honda Finance, Account No. 489748XXX, (hereinafter the "Account"). Plaintiff did not apply for or authorize this Account to be opened in his name.

20. On January 15, 2025, Plaintiff disputed inaccurate information appearing on his Experian credit report. Specifically, Plaintiff disputed the new Account being reported by Defendant as a fraudulent account and as not his.

21. On January 15, 2025, Plaintiff called Defendant to dispute the Account. This call

lasted 22 minutes, during which Defendant told Plaintiff they would send him an affidavit to complete so that the Account could be removed from his credit report.

22. On or about January 16, 2025, Defendant's agent, Honda Financial Services, sent Plaintiff a letter confirming receipt of his complaint about fraudulent activity in his name. With its letter, Honda Financial Services included an Identity Theft Affidavit form for Plaintiff to complete and return.

23. On January 23, 2025, Plaintiff faxed the completed Identity Theft Affidavit and supporting documentation to the attention of Giselle M. with Honda Financial Services.

24. Immediately thereafter, on January 23, 2025, Plaintiff called Defendant to confirm receipt.

25. On January 30, 2025, Plaintiff obtained a copy of his Experian credit report. The fraudulent Account and Defendant's inquiry were still reporting on Plaintiff's credit report.

26. On February 5, 2025, Experian forwarded Plaintiff its Dispute Results wherein Experian notified Plaintiff that Defendant verified the reporting of the fraudulent Account as accurate. As a result, the Account remained on Plaintiff's Experian credit report.

27. On February 12, 2025, Plaintiff called Experian to again dispute all of the inaccurate information appearing on his Experian credit report, including the Account. Thereafter, Experian forwarded Plaintiff's dispute to Defendant.

28. On or about February 16, 2025, Defendant reported the Account as 30 days past due. On that same day, Plaintiff's Experian credit score dropped by 89 points.

29. On February 17, 2025, Plaintiff called Defendant and left a voicemail following up on if Defendant had received the documents he submitted, whether they were processing

the information, and asking what the expected timeline was for the Account and inquiry to be removed from his credit report.

30. On February 18, 2025, Plaintiff called Defendant again. During this call, Defendant informed Plaintiff that they needed him to resend the Identity Theft Affidavit and supporting documentation.

31. On February 18, 2025, immediately after his telephone call with Defendant, Plaintiff again faxed the documentation to the attention of Giselle M. at Honda Financial Services.

32. On February 25, 2025, Plaintiff called Experian to dispute the fraudulent Account appearing on his Experian credit report. Thereafter, Experian forwarded Plaintiff's dispute to Defendant.

33. On February 28, 2025, Plaintiff obtained a new copy of his Experian credit report which continued to include the fraudulent Account, which was now reporting as 30-days past due. Additionally, the unauthorized inquiry by Defendant remained.

34. On or about March 1, 2025, Honda Financial Services sent a letter to Plaintiff stating that their investigation into his identity theft claim was completed and that a request to remove the Account from Plaintiff's credit report had been sent to the Consumer Reporting Agency.

35. On March 27, 2025, Plaintiff obtained a new copy of his Experian credit report, and the fraudulent Account was no longer reporting. However, Defendant's unauthorized inquiry remained and continued to impact Plaintiff's credit score.

36. On June 30, 2025, Plaintiff obtained a copy of his Experian credit report which continued to include Defendant's unauthorized inquiry.

37. On January 26, 2026, more than a year after Plaintiff disputed the Account and inquiry and provided Defendant his identity theft report, Plaintiff's Experian credit report continued to include Defendant's unauthorized inquiry.

38. On February 12, 2026, Plaintiff called Experian to again dispute multiple inaccurate items appearing on his Experian credit file, including Defendant's unauthorized hard inquiry.

39. On February 20, 2026, Experian forwarded its dispute results which showed that Defendant's American Honda Finance hard inquiry had finally been removed.

40. On February 23, 2026, Plaintiff obtained his Experian credit report and verified Defendant's unauthorized inquiry was no longer reporting.

41. From December 21, 2024, through February 20, 2026, Defendant reported false, libelous, inaccurate, and defamatory information regarding the Plaintiff to the national credit reporting agencies and to numerous third parties, which harmed Plaintiff's' credit score and credit report.

42. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-0952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

**COUNT ONE**
**(Fair Credit Reporting Act)**

43. The Plaintiff adopts the averments and allegations of paragraphs 12 through 42 hereinbefore as if fully set forth herein.

44. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that Plaintiff disputed the Account information said Defendant had provided to a consumer reporting agency.

45. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

46. Defendant negligently violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by the Defendant to the consumer reporting agencies.

47. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agencies.

48. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

49. The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

50. Defendant completely failed and/or refused to conduct a detailed and searching inquiry as required by the FCRA. Instead, Defendant simply verified the Account each and every time it received an ACDV regarding Plaintiff's dispute of the Account as fraudulent, even after Defendant received Plaintiff's Identity Theft Affidavit.

51. As a result of Defendant's violations set forth above, the Plaintiff suffered damages

including, but not limited to, damage to Plaintiff's credit score and credit reputation, a delay in purchasing a home which cost Plaintiff money for a higher purchase price and higher interest rate, worry, inability to focus, loss of sleep, time spent repeatedly reaching out to Defendant to dispute the inaccurate information continuing to report on his credit reports, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

52. In addition, Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

53. Plaintiff is entitled to his attorney's fees and costs pursuant to 15 U.S.C. §1681o(a)(2).

**COUNT TWO**
**(Fair Credit Reporting Act)**

54. The Plaintiff adopts the averments and allegations of paragraphs 12 through 53 hereinbefore as if fully set forth herein.

55. Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information Defendant had provided to a consumer reporting agency.

56. Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

57. Defendant willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendant to a consumer reporting agency.

58. Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

59. Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

60. The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

61. Defendant willfully and intentionally failed and/or refused to conduct a detailed and searching inquiry as required by the FCRA. Instead, Defendant simply verified the Account each and every time it received an ACDV regarding Plaintiff's dispute of the Account as fraudulent, even after Defendant received Plaintiff's Identity Theft Affidavit.

62. As a result of Defendant's violations set forth above, the Plaintiff suffered damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, a delay in purchasing a home which cost Plaintiff money for a higher purchase price and higher interest rate, worry, inability to focus, loss of sleep, time spent repeatedly reaching out to Defendant to dispute the inaccurate information continuing to report on his credit reports, headaches, irritability, loss of enjoyment of life, physical pain and sickness,

frustration, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury or statutory damages, whichever is greater.

63. Due to Defendant's willful violations of the FCRA, Plaintiff is entitled to punitive damages in an amount to be determined by the jury.

64. In addition, Plaintiff has incurred litigation costs and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

65. Plaintiff is entitled to his attorney's fees and costs pursuant to 15 U.S.C. §1681n(a).

**COUNT THREE**
**(Fair Credit Reporting Act)**

66. Plaintiff hereby adopts all of the allegations set forth in paragraphs 12 through 65 as if set forth fully herein.

67. Experian Information Solutions, Inc. ("Experian"), the entity from which Defendant obtained Plaintiff's credit report, is a consumer reporting agency within the meaning of the Fair Credit Reporting Act.

68. The credit report Defendant obtained from Experian relating to Plaintiff was a "consumer report" within the meaning of the Fair Credit Reporting Act.

69. Under 15 U.S.C. §1681b(f), Defendant is prohibited from obtaining Plaintiff's credit report unless Defendant has a permissible purpose for obtaining said report.

70. Defendant's obtainment of Plaintiff's credit report when Plaintiff did not initiate

same by way of applying for credit was a violation of 15 U.S.C. §1681b(f) as Plaintiff did not authorize Defendant to retrieve or view his credit report nor was a firm offer of credit made to Plaintiff.

71. Defendant had no permissible purpose in obtaining Plaintiff's credit report.

72. In connection with Defendant's practices of obtaining credit reports without a permissible purpose, and specific to Defendant having obtained Plaintiff's credit report without a permissible purpose, Defendant acted negligently and/or willfully.

73. In connection with Defendant's practices, Defendant certified to Experian that it was requesting Plaintiff's credit report in response to a request by Plaintiff when, in actuality, said request was made without Plaintiff's permission or knowledge. Accordingly, Defendant obtained the credit report through false pretenses within the meaning of 15 U.S.C. §1681n(b).

74. As a result of Defendant's negligent and/or willful practice of violating the Fair Credit Reporting Act, Plaintiff has been caused to suffer damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, a delay in purchasing a home which cost Plaintiff money for a higher purchase price and higher interest rate, worry, inability to focus, loss of sleep, time spent repeatedly reaching out to Defendant to dispute the inaccurate information continuing to report on his credit reports, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be

determined by the jury.

75. As Defendant's conduct, action, and inactions were willful, Defendant is liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. §1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. §1681o.

76. Plaintiff is entitled to recover attorney's fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681o.

**COUNT FOUR**
**(Defamation, Libel, and Slander)**

77. The Plaintiff adopts the averments and allegations of paragraphs 12 through 76 hereinbefore as if fully set forth herein.

78. Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large. Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish, and emotional distress.

79. Said communications were false in that Plaintiff was not indebted to Defendant. Plaintiff did not owe any balance on the Account the subject of this action as said Account were clearly fraudulent.

80. Said false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff. Specifically, Defendant reported the Account to Experian, a national credit reporting agency, as belonging to Plaintiff so the Account would appear on Plaintiff's credit reports. Plaintiff's credit reports were viewed

by numerous third parties and Plaintiff suffered damages as a result.

81. Defendant communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including but not limited to reporting that Plaintiff owed the Account the subject of this action.

82. At the time said communications were made, Defendant knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

83. As a result of Defendant's intentional communications to third parties of the false information, Plaintiff was caused to suffer injury to his reputation in the eyes of his community and the public at large, and was forced to endure credit reporting of the Account in spite of the fact that Plaintiff did not owe the Account as it was fraudulently opened in his name without his knowledge or permission.

84. As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, and made to suffer humiliation, anxiety, stress, headaches, loss of sleep, anger, worry, physical sickness, loss of enjoyment of life, and mental anguish for which he claims compensatory and punitive damages.

**AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual or statutory damages from Defendant pursuant to 15 U.S.C.

§1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1).

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D. For actual, compensatory, and punitive damages for Defendant's violation of South Carolina common law as set forth herein;

E. For this matter to be heard by a jury; and

F. For such other and further relief as this Court deems necessary and proper.

s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
**HAYS CAULEY, P.C.**
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com
*Attorney for Plaintiff*

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
American Honda Finance Corporation
c/o Corporation Service Company – Registered Agent
100 Coastal Drive, Suite 210
Charleston, South Carolina 29492